The last argued case this morning is Edison, LLC, doing business as Click Funnels v. HighLevel, 2025-1711. Mr. Hintz. Thank you, Your Honor, and may it please the Court. Today, I would like to address three errors that the District Court made. First, the District Court failed to properly apply Rule 12 in that the District Court did not look to the allegations in the amended complaint and certainly did not review the well-pleaded allegations and give them the assumption of truth and validity. The second was the failure of the Court to limit its analysis, as required by the Third Circuit's decision in Mayer v. Belichick, to only look to the amended complaint or the patents in issue. The District Court instead either used its own knowledge or found facts that were outside of the amended complaint and the patents in suit, and that is impermissible. The third and final error we submit is that the Court did not apply the clear and convincing evidence standard, did not require HighLevel to prove that the inventive concepts, of which we argue there are three, at least three, but we argue three, did not require them and did not rule that there was clear and convincing evidence that those inventive concepts were well-known, conventional, or routine. On 12B6, what's your best example pointing to the amended complaint of a well-pled, non-conclusory, plausible allegation that goes to inventive concept that you think the District Court did not take as true? There are three, Judge Starr. One is... Give us at least one. All right. The first one comes in the amended complaint sequentially as paragraph 30. And where can I find it? I believe that's 137, appendix 137, or 138. Yeah, 137 and 138, paragraph 30. And what do you see in there? Paragraph 30 discusses the advantage that comes about from the sequential web pages. If I'm remembering correctly, let me look to paragraph 30. I'm sorry. Yes. What this patent concerns, the second of the three, if you will, inventive concepts, is that there are a series of directional web pages. And one thing that is important to step back, because there seems to be some confusion at the District Court and in high-levels briefing. A website is a thing that we're all familiar with that is made up of web pages. But web pages are individual pages. The inventive concept in this patent is instead of taking individual pages and layering them in some fashion, the inventive method says, we already have a series, what the patent calls a funnel. And that's where the name ClickFunnels comes from, from my client. The idea is when somebody is designing a website, they're selling cars, they don't want to have to pick every single web page that should be part of that website. The patented method does that for them. It says, here is a series of web pages that can be used in a sequence to motivate a guest on your website, to push a guest on your website towards a purchase decision. So those are already pre-made. And the advantage of them being pre-made, the technological advantage, is there's conditional logic already built in. And so there does not have to be a back and forth between the user of the website and the website itself of one thing after another after another. When we come back to paragraph 30, then, what do you see in here that the district court failed to take as true and goes to step two of Alice? The district court did not mention anything other than two paragraphs out of the amended complaint. I understand that. But what is in here, affirmatively, that's helpful to you that he didn't take as true? Your Honor, I submit what I've just tried to explain, that by using the series of directional web pages, there's less computing power that is required on both sides of what's happening, both on the user of the website and the server of the website. And is that, I can see that in paragraph 30, where you allege that? Yes, Your Honor. It's third line at the bottom of appendix 137. Second to there, both the user's local computer and the remote server hosting the website to use less computer power because the templates already have conditional logic built in. And do you allege that that is inventive or not well understood, routine and conventional as of the time of the patent? Yes. In paragraph 30? We don't allege it because what we are alleging is why. We are not going to make the statement that this is an inventive concept, period. What we did in the amended complaint was go beyond that because, as I think we could all agree, that would be a conclusory allegation that need not be taken as true. But what we did is we said, here is the concept that we say is inventive. Here's why it's inventive. And it's tethered to the patent in the way it needs to be according to cooperative entertainment and cases like that. These are concrete allegations like were required in Atrix, required in Ameren, and they're tethered to the patent. They're not just things that we made up on their own. We can point back to the patent on why it works. And, frankly, even if they weren't, CELSPIN tells us that as long as the inventive concept is captured by the claims, it need not be explained in the specification why it's not conventional, well-known, or routine. That's straight from the case. And we submit that is what we have here. It does not have to be explained in the specification because we're not talking about enablement. We're not talking about written description. But it has to be. The inventive concept has to be in the claim. And here it is in the claim because a series of directional web pages is a claim element. You don't dispute on appeal the district court's analysis at step one of ALICE, correct? Correct. And I didn't hear you mention representativeness of claim one today. It's in your briefing. But is that still an issue you're pressing? It is, Your Honor. But in the interest of time, I wanted to focus on the other issues. But I'm happy to discuss that. Wouldn't any error with respect to representativeness here be merely harmless because the district court did seem to go on and analyze the trigger limitation at step two of ALICE? I can see that this court would view it that way, in which case I'm prepared to discuss why the trigger limitations are inventive concepts. Could you show me where you allege something in the complaint about the trigger limitation that you think the district court did not take as true? Yes, Your Honor. That's paragraph 38, appendix 140. And if I could just paraphrase that when you have these ordered rules that allow the trigger to cause something to happen, it's, as it says in the middle of 38, in contrast, using traditional systems and methods, analytics would have to be run on a customer-by-customer basis. And then it goes on, and they say that would consume more processing power and time than the technology disclosed and claimed in the patents that suit. So, again, it's this notion of having the necessary tools from the method, the steps of the method, embedded, if you will. And it avoids the back-and-forth, which is why it's fundamentally wrong for high-level to argue that these series of directional web pages and the websites themselves are what they call filtering, that it's just a back-and-forth between somebody who's designing a website. That is absolutely not what this patent does. That is the opposite of what this patent does. This patent says we do not want to have people have to go back and forth. We are going to present them with a series of directional web pages that they can use to make their website. And then one has to also remember about this patent that there are two sets of users where the inventive concepts come into play and the technological advantages come into play. One is the person who's designing the website. That user, the patent calls the system administrator or administrator. The other user is the ultimate user of the website itself, and that the patent calls the guest or the visitor. And it's important to know the difference and note the difference between the two, because, for example, the second inventive concept that we haven't discussed is the website editor graphical user interface that's provided on the client computer. That client is the website developer. So high-level wants to talk about, and the district court judge wanted to talk about, well, you can't say a website editor graphical user interface is an inventive concept. Now, the judge doesn't cite anything for that. He just says it. But even if that's true, that's not what the claim element is. The claim element says providing a website graphical user interface on the client side. It's not just that there's an interface. It's not just a website editor. It's where it's located. And as high-level's own discussion of AMDOCS and FASTCOM point out, that where something is located is important. From high-level's brief, page 42, about AMDOCS, the inventive concept was found in the particular arrangement and operation of components in a distributed architecture that enabled load distribution and reduced congestion in network bottlenecks. That's AMDOCS 841F3 at 1303. The district court maybe didn't cite the specification or the complaint very much, but he does cite a bunch of our cases, and I think he's right that your claims look a lot like claims that we have found not to survive 101 challenges. The language seems pretty functional and results-oriented. We don't get a lot of detail about how to do this. Similar technologies we've said are not inventive. I'm not clear on what, if anything, I would accomplish if I sent this back to the district judge. Can you help me on that? I can, and to be perfectly blunt, Your Honor, I think it's not really an option because the judge failed to follow the rules of Rule 12 and treated this more as a Rule 56 motion. But to your point, the reason to send it back is the other cases, 20 of the cases that High Level has cited of things that were well-known conventional routine, 20 of those cases it was admitted that those things were well-known conventional routine, either during argument or in the specification of the patents in suit. We don't have that admission here. High Level says in their brief that we admitted it repeatedly that the things that we are claiming were inventive. They cite one place in the specification, and that place talks about the prior art, talks about how prior systems had to use cookie-cutter websites. It has nothing to do with directional web pages, nothing to do with where the website editor is located, and nothing to do with triggering conditions. I do want to go to the 12D argument because in response to Judge Stark's question, you said that basically you didn't think we could affirm. I think that was what you were getting at. Can you expand on your 12D argument in terms of how the district court, in your opinion, relied on things that were impermissible to rely on? Yes, Your Honor. We believe that the district court erred in that regard in two main areas. One is, and both of these appear in Appendix 14, page 14 of the decision. The judge says claim one's reference to a website editor graphical user face is also not inventive. Period. Why? What in the record is the judge able to hang that hat? What peg is he able to hang that hat on? There's nothing cited. Second one is when the judge states, again on Appendix 14, directional and sequential web pages as well as website types and templates are all generic computer functions or data types. And what does he cite in support of that? Nothing. Now, to Judge Stark's comment about this Court's previous cases, the judge did cite with the website graphical user interface, he did cite to two cases. But those cases don't say that the website editor was located on the client side. Those cases don't say that the parties and the patent owner in that case had well-pleaded allegations. So it's a bit of a mystery, which is why I find it, frankly, troublesome that in this area of Section 101, there's a Sesame Street, which one of these is not like the other aspect to it, where one looks at words and one looks at concepts and tries to fit with what the Court has done. I think that is useful more so for the abstract idea portion for Step 1. Counsel, you're well through your rebuttal time. Thank you, Your Honor. You can continue or save it as you wish. I believe it would be prudent to save it. Thank you. We'll give you two minutes for rebuttal. Thank you. Mr. Schaffer. Good morning, Your Honors. May it please the Court. Rob Schaffer for High Level. I'd like to start, I guess, with the procedural argument. This Court's de novo review critically deflates any of ClickFunnels' procedural arguments here. What is your response directly, though, to whether or not the District Court relied on matters it could not in terms of a 12-year trial? Motion. Sure. Drawing any of these conclusions is a legal analysis. It's not extrinsic fact-finding. There's nothing that suggests that the Court went outside of the specification itself. That's what courts do in 101 analysis that are legal analysis. Forgive me for interrupting, but go right to Appendix 14. Directional and sequential webpages as well as website types and templates are all generic computer functions or data types. That sort of reads like a fact-finding. If it's a conclusion of law, what's it based on? I think it's based on the specification, Judge Stark. Clearly, taking the first of the purported inventive concepts, a series of directional webpages. It's defined in the specification. It's defined as a series or a sequence or funnel of webpages. Can you tell us exactly what page you're citing to in this? Yes. I'm on Appendix 58, Column 2, starting at Line 62, Your Honor. It's a series, for example, a sequence or funnel of webpages that are ordered and designed to entice, for example, elicit, encourage, prompt, evoke, cause, et cetera, at least one particular user interaction with the website. They have admitted, and my friend on the other side just admitted, that these are preordered, they're pre-templated, and they're designed to entice a user to do something on the webpage. The specification never explains any unconventional technical implications. We've never said, have we, that the specification, if your specification doesn't describe something as inventive, you're out of luck, it can't be inventive? No, Your Honor. It doesn't have to say that it's inventive. I think a person's skill in the art reading the disclosure and how it's described, when there's no technical component to any of it, can determine whether it's conventional or routine. But in this case, the specification concedes, and I think ClickFunnels concedes that these are simply webpages that are set up by the host, that are preordered, that are meant to elicit a response. That in and of itself is an abstract idea. We're not talking about an abstract idea. That's the problem I have here. You won on step one. You won so well that that's not even disputed. Sure. The issue is whether there's a fact dispute at step two, at a Rule 12 stage, when no evidence has been presented and the law requires us to take all the well-pled factual allegations in favor of your opponent and all reasonable inferences. Sure. And so when I see something like directional and sequential webpages, as well as website types, are generic computer functions, I don't know how I know that or how I find that at a Rule 12 stage. Particularly, and you haven't even addressed yet, fair enough, I've asked you a bunch of questions, but the complaint has allegations, for instance, at paragraph 30, that I think at least reasonably suggest that while you may prove this is all generic and conventional, they're alleging it's not. Your Honor, I think that certainly the district court need to accept, I think you need to look at the nature of the allegations. The court needs to look at the nature of the allegations. And here, they're not well-pled. They're not tethered to any specific claim element. The claims just generally recite generalized steps. There's nothing that ties these allegations to the claim itself, and they're not supported by the specifications. We know that conclusory or implausible legal assertions, unlike well-pled factual allegations, do not need to be credited. And I think that's what we have here, Your Honor. I don't think any of the allegations here, in view of the spec, in view of how each of these purported claim limitations as inventive concepts are defined. So what do you believe would have been sufficient pleading, right? We're already at the amended complaint stage. There was original complaint. Motion is misfiled. They're like, we're going to amend and try to fix your concerns. What do you think would have been satisfactory? Satisfactory in terms of Judge Cash? To survive a 12B6. I think they would need to have relied on something specific as a technical advancement in the specification, something that was new and different over prior art systems. And we saw that in some of the cases that they relied on, but they don't have that here. Something specific that's tied to the claim, for example, a new way of doing a B2B interaction through a wireless device or a new way of an authentication that is technical in nature. These claims have no technical specificity to it. It's simply providing a pre-templated web page designed for a user to do something. It is the user selecting a template and a website type and then generating a website. There's nothing technical. There's no how this is being done. And to have an inventive concept, you need to show some technical advancement, which they don't have here. And not only that, but you have to— Based on the decision that's before us, how do we know that the district court didn't do any impermissible fact-finding and just relied on what was in the pleadings? Well, I think there, Your Honor, is the district court read the specifications and looked at the claims, and the specifications clearly define all of these purported inventive concepts as abstract ideas. He doesn't need to address each and one of the allegations if they're not well-pled factual allegations. They're conclusory in nature, and they need not be credited, and he did not credit them. I can go through the inventive concepts that they purport to carry the day for them with respect to this procedural issue. But again, I think most notably in the allegations that they do spell out, they talk about an advancement, but we're talking about just a consolidation of a user's experience from multiple vendors and somehow that creates a technical solution to bettering computer technology. But it's not tethered at all to the claims. There's nothing within the claims that talks about any of these purported advancements. And in terms of the individual limitations, they are in and of themselves an abstract idea. Take the triggering limitation, for example. That is nothing but standard conditional logic. If user does X, then system does Y. It's described in the spec as if the user leaves the website, then an email is generated to come back. If the user buys something on the website, then it prompts the website to send them a thank you email and possibly a receipt. Those are abstract ideas in and of themselves. There's nothing technical in nature about them. There could be something not well understood, not conventional, not routine, about the ordered combination of the limitations, including the trigger, at the time of the patent. And a fair, reasonable reading of their allegations may suggest that that's what they're arguing. Your Honor, I don't find individually, and I didn't hear anything from counsel here, that the allegations are plausible as they're framed. Let me come at it the other way then. Let's go back to 14. The district judge says claim one's reference to a website editor graphical user interface is also not inventive. How does he know that, or how do I on de novo review know that? Well, as it's defined in the spec starting at figure 3E, and this is at A33 and further defined in column 19, this is simply a text editor on a user display. It's just editing on a display screen. These have been ubiquitous in e-commerce and web authoring software since the beginning of time. This is the district judge employing an analyst. It sounds like, I mean, what you're saying seems consistent with my experience in the world, but that doesn't necessarily mean it's factually correct or that I can reject their well-pled factual allegation to the contrary, does it? Well, it doesn't mean that you can reject their well-pled factual allegations, but again, these are not well-pled factual allegations because they're not tied to the specification in any specific fashion. The specification and the law on this, the authority on this is clear, Judge Stark. If it's untethered to the claims and more so if the specification refutes or comes out to a contrary understanding as a person of skill in the art would understand these purported inventive concepts, then it does not need to be credited and accepted as true. This court has had multiple cases in which that's the matter. I can think of mobile acuity, for example. I can think of IBM and others that are decided at work. Where I'm struggling, candidly, is I'm just not sure where in the specification or in the complaint or out of the mouth of counsel you're getting the kinds of admissions of conventionality or lack of inventiveness that those other cases for sure had. Well, the specification does not need to say that they're unconventional. A person skilled in the art reading it. At the Rule 12 stage, don't we have to read the specification essentially in the light most favorable to the patentee? At the Rule 12 stage, the court should, let me start by saying this. High level does not bear the burden of proving anything. My friend on the other side says that we have a clear and convincing standard. The issue is whether the allegations accepted as true prevents resolution as a matter of law. And Berkheimer states that conventionality can be decided as a matter of law where there is no disputed issue of fact. Counsel, just to kind of address the concerns that I think both I and Judge Stark have raised, can you go back to your point about the fact that you thought our de novo review will cure some of these procedural concerns? So in the three minutes you've got left, can you kind of cover those concerns? Sure. The de novo review of Alice Step 1 has been conceded. Alice Step 2 points to three purported inventive concepts. A website editor, which is abstract in and of itself. A pre-templated, pre-ordered directional webpage, which is enticed for a user to do something. That's just organizing activity, human activity. That is abstract. And the third one is the trigger event response, which is basically an interactive website that's been around since the beginning of websites where if X happens, then system does Y. Those are the three things he points to. The other one, I think, which does not say the only one, the only purported advancement in the entire specification is this idea of combining multiple vendors into one system. That in and of itself is an abstract idea. So I think a person skilled in the art reading this specification would understand that individually each of these is an abstract idea in and of itself. A novel abstract idea does not save the claims from ineligibility at Step 2, even if these are novel. They make no claim that any of these are novel. And a person skilled in the art would understand that these are just general ideas that are part of web editing that has been around since websites have been around. There's no technical structure to them. There's nothing but an aggregation of the prior art problem, which was having to go to multiple vendors and putting them under one roof. That's what they did, or that's what they say the problem was. And their solution to that problem was making a user, being able to create this website within a single system. Again, that's nothing but a business convenience. It's an abstract idea in and of itself. It makes the system more user-friendly. There's no technical advancement here in any of the individual claim limitations that they point to. There's just no data structure. There's no algorithm in the spec. The eight columns that they rely on in the specification as to directional webpages, all it is is marketing content and marketing strategies. I think pointing to that helps our side, does not help them, to show that there's nothing technical in nature at all in the specification that will help them as to Step 2. And that's what they need to show. If we go back to the allegations, again, there's nothing that tethers those allegations to the claim. There's nothing that this Court has to accept as true because they're facially implausible. Thank you, Your Honor. I see my time's up. Thank you, Counsel. Mr. Hintz, two minutes if you need it. Thank you, Your Honor. I would like to start at the end of Counsel's presentation and point out High Level repeatedly discusses how this patent deals with putting everything under one roof. It does, but it's not the inventive concept. And you haven't heard me say it's the inventive concept. So set that to the side. This patent could say do this on a Tuesday or do it on a Wednesday. It says put it under one roof. That's not the inventive concept. The inventive concept are the three things that I've laid out. And to say they're not tethered, some of those inventive concepts are in the claim itself. Claim 1 of 357 says providing the website graphical user interface on the client device. That's the inventive concept. It's right in the claim. And Counsel can say all he wants that, oh, that's obvious. It sounds like an obviousness argument slipping into this discussion today. But where is the evidence of that in the amended complaint or in the patent itself? That is all the district court was allowed to look at. Now, the district court did not cite to where anything in the amended complaint says, oh, here's an admission why a website editor on the client side was conventional. It didn't cite to anything in the specification that says that. Nor has High Level. High Level just says, oh, we should be able to look at patents and decide. What he just finished up with was most or all of your inventive concepts are really just the abstract idea. And we know if all we're doing is practicing the abstract idea, you lose. So why shouldn't I see this as at best you're just practicing the abstract ideas at step two? Well, I think if I was hearing Counsel correctly, a lot of what I heard was you have to have a new computer chip or you have to have a new modem or you have to have a new router. Everything was physically based. Software inventions run on conventional hardware. And this court has said many times that it is not dooming to a patent that it runs on conventional hardware. So my time is up. May I finish my answer? Finish your thought. Thank you. My answer, Judge Stark, is that these things that we've pointed to, these are the inventive concepts because that is what makes the claims work, which makes the system work, and why we believe that the district court should be reversed. Thank you to both counsel. The case is submitted.